IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISCTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JEANINE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| QUANTEM AVIATION SERVICES, LLC | ) | **COMPLAINT FOR MONETARY,** |
| MATHESON TRUCKING, INC., | ) | **DECLARATORY, AND** |
| MATHESON FLIGHT EXTENDERS, INC., | ) | **INJUNCTIVE RELIEF** |
| and RONALD SHUFELT, | ) | |
| | ) | |
| Defendants. | ) | |

## PRELIMINARY STATEMENT

1. Plaintiff Jeanine Jackson brings this action seeking relief for the unlawful discrimination
   she suffered during her employment with her former employer, Defendant Quantem
   Aviation Services, LCC, (Defendant Quantem),  the unlawful retaliation perpetrated by
   her former supervisor, Defendant Ronald Shufelt, and the unlawful discriminatory actions
   taken by Defendant Matheson Flight Extenders, Inc. in refusing to hire her.

2. Plaintiff was employed by Defendant Quantem Aviation Services, LCC, but she was paid
   less than her male counterparts for the same work.  When she attempted to obtain equal
   pay, her supervisor, Defendant Ronald Shufelt, retaliated against her by falsely accusing
   her of misconduct, causing their new prospective employer, Defendant Matheson Flight
   Extenders, Inc. to refuse to hire her.

3. This action is brought pursuant to the Equal Pay Act and related provisions of the Fair
   Labor Standards Act, 29 U.S.C. § 201, et seq.; Title VII of the Civil Rights Act of 1964,

1

as amended, 42 USC § 2000e, et seq., (Title VII); New York Labor Law, §190 et. seq;

the New York State Human Rights Law, Executive Law § 296, et seq.; and New York

State common law.

## I. JURISDICTION AND VENUE

4.   This court has jurisdiction over all claims in this action against defendants pursuant to 28

U.S.C. §§1331 and §1343(a) (4), 29 U.S.C. §216(b), and 42 U.S.C. § 2000e-5(f).

5.   Plaintiffs' request for declaratory relief is authorized by 28 U.S.C. §2201 and §2202.

6.   This court has supplemental jurisdiction of plaintiff's claims brought under New York

statutory and common law pursuant to 28 U.S.C. §1367(a).

7.   Plaintiff seeks monetary damages pursuant to 29 U.S.C. §216(b): 42 USC §1981(a); New

York Labor Law §190 et seq.; New York Executive Law § 297(9) et seq.; and the

common law of the State of New York.

8.   Venue in this court is proper under 28 U.S.C. §1391(b). All or a substantial part of the

acts giving rise to plaintiffs' claims occurred in the Western District of New York.

## II. PARTIES

**Plaintiff Jackson**

9.   Plaintiff Jeanine Jackson is 32 year old African-American woman, and resides in the City

of Rochester with her two children.

10.   Between June 2016 and June 25, 2017 while working for  Defendant Quantem Aviation,

Inc. (Quantem) Plaintiff Jackson was  an "employee" as this term is defined in 29 U.S.C.

§203(e)(1), New York Labor Law §190(2),  and the New York Human Rights Law,

Exec. Law §297(9).

2

11.   While working for Defendant Quantem, Plaintiff Jackson was entitled to be paid at least semi-monthly for her work, as defined in New York Labor Law §191(1)(d).

**Defendant Quantem Aviation Services, LLC**

12.   Defendant Quantem Aviation Services. LLC is part of the Inland Group of Companies, and provided mail handling at the Rochester Airport under contract with the United States Postal Service through June 25, 2017.

13.   Defendant Quantem is an "employer" as this term is defined in 42 USCA § 2000e (b); 29 U.S.C. §203(d); and New York Labor Law §190(3).

14.   Defendant Quantem is an "enterprise engaged in interstate commerce or in the production of goods for commerce" as those terms are defined in 29 U.S.C. §203.

**Defendant Ronald Shufelt**

15.   Defendant Ronald Shufelt is a resident of the City of Rochester, New York and was employed as plaintiff's supervisor during the time when both Plaintiff Jackson and Defendant Shufelt were employed by Defendant Quantem.

16.   At all times herein, Defendant Ronald Shufelt was acting within the scope of his employment as plaintiff's supervisor while employed with Defendant Quantem.

17.   Upon information and belief Defendant Ronald Shufelt is now employed by Defendant Matheson Flight Extenders, Inc. in substantially the same position he held with Defendant Quantem, a supervisor of material handlers.

3

**Defendants Matheson**

18. Upon Information and belief, Defendant Madison Trucking Inc., owns and/or operates a series of corporations including Defendant Matheson Flight Extenders, Inc. These defendants are collectively referred to herein as "Defendant Matheson."

19. Defendant Matheson Flight Extenders, Inc. specializes in air terminal handling and ground support series for the United States Postal Service and other commercial carriers.

20. Matheson Flight Extenders, Inc. was selected by the United States Postal Service to take over terminal operations at the Rochester airport on June 26, 2017.

21. Defendant Matheson is an "employer" as this term is defined in 42 U.S.C. § 2000e (b).

### III. COMPLIANCE WITH JURISDICTIONAL REQUIREMENTS OF EMPLOYMENT CASES

22. Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission against Defendant Quantem and Defendant Matheson within three hundred days of the commission of the last unlawful employment practice. With said charges, plaintiff alleged that defendants violated her rights under state and federal employment laws.

23. Plaintiff was issued two separate Right to Sue Notices from the Equal Employment Opportunity Commission with respect to Defendant Quantem and Defendant Matheson on January 17, 2018. Copies of these Notices are attached hereto as Exhibit A.

24. This complaint has been filed within 90 days of receipt of the EEOC Right to Sue Notices.

25. Plaintiff has consented to be a plaintiff for her claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., a copy of which is attached hereto as Exhibit B.

## IV. FACTS

26. Plaintiff started working for Defendant Quantem in April 2016 as a material handler.

27. In June 2016 plaintiff was promoted to lead handler by her supervisor, Defendant Ronald Shufelt and the Quantem general manager, Todd Pennington.

28. When plaintiff was employed by Defendant Quantem, the company paid its material handlers $15.58 per hour, and its lead material handlers were paid $16.58, one dollar per hour more.

29. After her promotion, plaintiff went to trainings to learn how to complete lead handler reports.

30. A team of Quantum handlers generally scanned and sorted 70,000 to 80,000 lbs. of mail in containers at the Rochester airport every day from or for transport by Federal Express.

31. Lead handlers such as plaintiff, did this work plus additional reporting, managing, and leading duties.

32. During plaintiff's employment, Defendant Quantem employed approximately 20 to 25 handlers and about 3 lead handlers.

33. During plaintiff's employment with Defendant Quantem at the Rochester Airport, all the other lead handler positions were held by men.

34. Plaintiff performed her job satisfactorily as a lead material handler.

35. Plaintiff was the only female lead handler employed by Quantem at the Rochester airport.

36. In August 2016 plaintiff noticed that she was not being paid at the lead handler pay rate for her work.

37. As a lead handler, Plaintiff Jackson was paid at the lead handler rate of $16.58 per hour for only some hours of her work, and at the lower rate, $15.58 for the remainder of the hours she worked.

38. In August 2016, plaintiff complained to her supervisor, Ronald Shufelt about not receiving her lead pay for the hours she had worked.

39. Defendant Shufelt responded, "OK, I'll take care of it", but he never did.

40. After making her complaint about being underpaid to Defendant Shufelt in August 2016, plaintiff continued to complain about being underpaid approximately once per month to her supervisor Defendant Shufelt, and to Todd Pennington, the general manger.

41. Plaintiff continued to be underpaid for her work for the next nine months, and on June 9, 2017 plaintiff complained directly to Jennifer Coombs, the Quantum Aviation Services Human Resource Manager about not being properly compensated for her work.

42. Defendant Quantem immediately responded by agreeing to make plaintiff "the LEAD in charge of pay issues" at a pay rate of $16.58 per hour.

43. On June 9, 2017 plaintiff accepted the position as lead in charge of pay issues as offered by Defendant Quantem.

44. As lead in charge of pay issues, plaintiff's duties included the "review, scan and email the sign in/out sheet to Shaun [Kane, the Quantem Business Area Manager] for both shifts before leaving in the morning."

45. According to Quantem, plaintiff was offered this position because "the company needed "a person at the facility we can trust to get us the information."

46. Another company, Defendant Matheson Flight Extenders, Inc., was selected by the US Postal Service to take over the work performed by Defendant Quantem Aviation in Rochester on June 26, 2017.

47. On June 12, 2017 plaintiff applied for a position working as a handler or lead handler with Matheson and passed the required drug test.

48. Around the same time, many other Quantem employees also applied for positions with Matheson, including plaintiff's supervisor, Defendant Ronald Shufelt and another material lead handler, Cordell James.

49. As part of her new timekeeping responsibilities, plaintiff discovered that despite her own complaints about being underpaid, Cordell James, another lead handler, had been continuously paid at the lead handler rate of $16.58 per for all his hours of work.

50. All male lead handlers employed by Defendant Quantem at the Rochester airport were paid at the lead handler rate of $16.58 per hour for all hours worked.

51. Plaintiff's supervisor, Defendant Ronald Shufelt had authority to approve employee time records; add time or subtract time from individual employee weekly time records; approve employee vacation time; and along with Cordell James, develop the weekly work schedule for Quantem employees.

52. Plaintiff also discovered that Cordell James and her supervisor, Ronald Shufelt, were incorrectly and over-reporting their time on the time in/out sheets by coming in early/or leaving early that she monitored as part of her job  (timeclock theft).

53. Plaintiff immediately brought her concerns about being underpaid and timeclock theft to Supervisor Ronald Shufelt, who became upset and told her, "Do not to do anything stupid".

54. On June 16, 2017, plaintiff reported to Shaun Kane, the Quantem Business Area Manager, and her time record discoveries about being underpaid as a lead handler and Defendant Shufelt and Cordell James' incorrect time records.

55. Because plaintiff feared retaliation from her supervisor during her last two weeks of employment with Quantem, she and Sean Kane agreed not to say anything to Defendant Shufelt about these issues.

56. Around June 16, 2017 plaintiff telephoned Twala King, an HR employee with Matheson, about sending a background check permission form to Defendant Matheson.

57. Plaintiff also told Ms. King about Defendant Shufelt and Cordell James' submission of false time records, and plaintiff's fear that Defendant Shufelt would retaliate against her in some way.

58. On June 16, 2017, Ms. King responded by email stating that "everything is going to be fine" and that John Miller, Matheson's Flight Extender's Safety Manger, "spoke highly of you" and that "the people that count in the process knows (sic) your worth".

59. Around June 18, 2018 plaintiff's supervisor, Ronald Shufelt, threatened Plaintiff Jackson stating "I know what you're trying to do. You're not going to get away with it."

60. Around June 20, 2017, Defendant Shufelt contacted John Miller, Matheson's Flight Extender's Safety Manger and prospective employer, and claimed that plaintiff had recently committed in timeclock theft and insubordination.

61.   Defendant Shufelt told Matheson that one night plaintiff had clocked into work at approximately 10:15 p.m., but that she did not start work until 11:15 p.m.

62.   In fact, for the five calendar days between June 16, 2017 and June 20, 2017, the earliest time plaintiff clocked into work was 11:29 p.m.

63.   Around this same time, plaintiff also spoke directly with John Miller, Matheson's Flight Extender's Safety Manger at the Rochester facility.

64.   Plaintiff explained to Miller that her supervisor, Defendant Ronald Shufelt's had submitted fraudulent time records, and expressed her concerns that her current job and job prospects were in jeopardy.

65.   Miller responding by proposing mediation and communication between the Quantem and Matheson HR departments to resolve the conflict.

66.   On June 21, 2017, in frustration with the lack of progress on receiving her lead handler pay (as well as the revealing and inappropriate work attire worn by lead handler Cordell James exposing his genitals) plaintiff filed a discrimination complaint with the New York State Division of Human Rights alleging sexual harassment, sexual discrimination and racial discrimination by Defendant Quantem.

67.   Plaintiff withdrew her administrative complaint after Shaun Kane, the Quantem Business Area Manager, agreed to resolve her pay issues and assured plaintiff she would not be fired by Quantem because there were no grounds for her termination.

68.   On June 26, 2017 Defendant Matheson took over operating the facility at Rochester Airport.

69. Plaintiff reported for work on June 26, 2017, but was informed by Matheson that she "wasn't cleared to work".

70. On June 26, 2017, Defendant Ronald Shufelt began working as a supervisor for Defendant Matheson and Cordell James began working as a lead handler for Defendant Matheson.

71. Finally, on June 28, 2017, as part of her paycheck, plaintiff finally received from Defendant Quantum $1430.03 in retroactive pay back to January 2017 for her lead handler work.

72. On June 29, 2017 plaintiff learned that she had not been hired by Defendant Matheson.

73. Defendant Matheson had originally intended to hire plaintiff and include her in the transfer of Quantem employees to Matheson on June 26, 2017.

74. Defendant Matheson "chose not to continue with the transfer" of Plaintiff Jackson to the new company based on Defendant Shufelt's reported claims of insubordination and timeclock theft.

75. In making the decision not to hire plaintiff, Defendant Matheson relied on Defendant Shufelt's June 20, 2017 allegations of misconduct.

76. According to Defendant Quantem, "no Quantem manager was authorized to provide any information about employees to Matheson".

77. Defendant Matheson did not receive statements from any other Quantem employees regarding Plaintiff Jackson.

78. In determining not to hire plaintiff, Defendant Matheson did not request nor did defendant receive any Quantem employee human resource files.

10

79. In determining not to hire plaintiff, Defendant Matheson never contacted Quantum HR personnel regarding plaintiff or her work record.

## V.  FIRST CAUSE OF ACTION
## VIOLATIONS OF THE EQUAL PAY ACT

80. During the period of the plaintiff's employment, Defendant Quantem was subject to the provisions of the Equal Pay Act, 29 U.S.C.A. § 206, et seq.

81. Plaintiff was the only female lead handler employed by Quantem at the Rochester airport.

82. All male lead handlers employed by Defendant Quantem at the Rochester airport were paid at the lead handler rate of $16.58 per hour for up to 40 hours of work, and $24.87 per hour for overtime.

83. As a lead handler, Plaintiff Jackson was sometimes paid at the lead handler rate of $16.58 per hour for her work, but she was paid at the lower rate, $15.58 for most of the hours she worked during a 40 hour work week.

84. As a lead handler, Plaintiff Jackson was sometime paid the lead handler overtime rate, $24.87 per hour, and sometime at a lower rate for her overtime work.

85. During plaintiff's employment, Defendant Quantem required Plaintiff Jackson to perform the same or substantially the same job position as other male employees designated as lead handlers, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment and paid plaintiff, at a rate of pay, including salary and overtime less than such male employees.

86. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than gender.

11

87. Defendant Quantem engaged in patterns, practices and/or policies of employment which discriminated against plaintiff on the basis of her sex by paying Plaintiff Jackson a lesser rate of pay, including hourly and overtime pay than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at Defendant Quantem's Rochester airport facility.

88. By the actions described above, among others, Defendant Quantem has violated the Equal Pay Act.

89. As a direct and proximate result of Defendant Quantem's unlawful and discriminatory conduct in violation of the Equal Pay Act, plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### VI. SECOND CAUSE OF ACTION
### VIOLATIONS OF THE FAIR LABOR
### STANDARDS ACT FOR LATE PAYMENT OF WAGES

90. The Fair Labor Standards Act, 29 U.S.C. § 216(b) provides for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wages at the time they were due.

91. Defendant Quantum paid plaintiff with paychecks issued bi-weekly for her work as a material handler and lead material handler.

92. During her employment, Defendant Quantum issued plaintiff approximately 31 bi-weekly paychecks in payment for her work as a material handler and lead material handler.

93. In issuing these paychecks, Defendant Quantum frequently did not pay plaintiff the total amount of wages and overtime wages plaintiff had earned during the prior two week pay period.

94. Defendant Quantem underpaid plaintiff her overtime wages during her employment in virtually every paycheck.

95. Towards the end of her employment, on June 28, 2017, defendant issued plaintiff a paycheck including a partial payment of retroactive wages totaling $1430.30

96. Congress provided for liquidated damages in Section 216(b) as a means of compensating employees for losses they might suffer by reason of not receiving their lawful wages on time.

97. As a direct and proximate result of Defendant's late payment of wages, plaintiff is entitled to liquidated damages representing an amount equal to the overtime compensation not timely paid by Defendant Quantem.

## VII.  THIRD CAUSE OF ACTION
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**Defendant Quantem**

98. During her employment with Defendant Quantem, Plaintiff Jackson was not consistently paid at the same wage rate as other lead material handlers, all of whom were men.

99. In her many efforts to obtain pay equity with the other lead handlers; plaintiff was discriminatorily treated because of her sex by Defendant Quantem in violation of Title VII, 42 U.S.C § 2000e–2(a)(1).

100. By the actions described above, among others, Defendant Quantem has violated the anti-discrimination provisions of Title VII.

101. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**Retaliation by Defendant Shufelt**

102. In her efforts to obtain pay equity with other lead handlers, plaintiff became a victim of unlawful retaliation under Title VII perpetrated by her supervisor, Defendant Ronald Shufelt in June 2017.

103. As part of her efforts to obtain pay equity with other lead handlers, and following her employer's instructions to insure that her time was correctly reported in its timekeeping system, plaintiff discovered that other lead handlers were being paid $16.58 for all hours of work, and that her supervisor, Defendant Ronald Shufelt was inaccurately reporting his worktime and committing timeclock theft.

104. In response to plaintiff's attempts to secure her rights to equal pay, Supervisor Defendant Shufelt retaliated against plaintiff around June 20, 2017 by contacting John Miller, a representative of their prospective employer, Defendant Matheson.

105. Around June 20, 2017, Defendant Shufelt informed Miller that he was plaintiff's supervisor and that Plaintiff Jackson had committed several "terminable offenses".

106. Around June 20, 2017 Defendant Shufelt informed Miller that Plaintiff Jackson had committed "timeclock theft" and "insubordination".

107. Defendant Shufelt's allegations of misconduct committed by Plaintiff Jackson were false and inaccurate.

108. Defendant Shufelt's allegations regarding plaintiff's misconduct made to Defendant Matheson were the product of discriminatory or retaliatory intent.

14

109. As a proximate result of Defendant Shufelt's retaliation against her, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, and other employment benefits.

110. As a further proximate result of Defendant Shufelt's actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

111. Defendant Quantem is vicariously liable under Title VII for the retaliatory and discriminatory actions taken against Plaintiff Jackson by her supervisor, Ronald Shufelt.

**Defendant Matheson's Negligence**

112. Plaintiff was unware that Defendant Shufelt's had made false allegations against her to Defendant Matheson, but soon thereafter, plaintiff also spoke with Defendant Matheson's Safety Manager, John Miller about Defendant Ronald Shufelt's submission of fraudulent time records to Defendant Quantem.

113. Based on Defendant Shufelt's allegations of misconduct committed by the plaintiff, Defendant Matheson decided not to hire Plaintiff Jackson when Defendant Matheson took over the facility on June 26, 2017.

114. Plaintiff was otherwise qualified for the positions of lead handler or material handler with Defendant Matheson.

115. In refusing to hire Plaintiff Jackson, Defendant Matheson was negligent in accepting as true the false and retaliatory allegations made by Defendant Ronald Shufelt against Plaintiff Jackson.

116. As a proximate result of Defendant Matheson's negligence in refusing to hire plaintiff, Defendant Matheson is liable to Plaintiff Jackson under Title VII for unlawful discrimination against her.

117. Since June 26, 2017 plaintiff has been unable, despite reasonable efforts, to find comparable employment.

118. Plaintiff Jackson has suffered and continues to suffer substantial losses, including the loss of past and future earnings, compensation, and other employment benefits as a result of Defendant Matheson's unlawful discrimination.

119. As a further proximate result of Defendant Matheson's actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation.

120. As a further proximate result of Defendant Matheson's actions taken because of plaintiff's sex, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

### VIII. FOURTH CAUSE OF ACTION
### VIOLATIONS OF NEW YORK LABOR LAW:
### FAILURE TO PAY WAGES WHEN DUE

121. Defendant Quantem willfully violated the rights of plaintiff by failing to timely pay her all her wages due and owing in violation of the New York Labor Law (NYLL) § 198(1-a).

122. As a result of Defendant Quantem's violations of NYLL § 198(1-a) plaintiff is entitled to recover any remaining unpaid wages, liquidated damages, pre-judgment and post-judgment interest, costs, and reasonable attorneys' fees.

### IX.  FIFTH CAUSE OF ACTION
### VIOLATIONS OF NEW YORK LABOR LAW:
### FAILURE TO COMPLY WITH NOTIFCATION REQUIREMENTS

123.  Defendant Quantem willfully failed to issue to plaintiff accurate legally mandated wage

statements in violation of NYLL § 195(3).

124.  Pursuant to NYLL § 198(1)(d), plaintiff is entitled to recover damages , costs, reasonable

attorneys' fees, and injunctive and declaratory relief  from Defendant Quantem for

violations under NYLL § 195(3).

### X.  SIXTH CAUSE OF ACTION
### VIOLATIONS OF NEW YORK LABOR LAW:  UNPAID SPREAD OF HOURS PAY

125.  Defendant Quantem willfully failed to pay plaintiff an additional hour's pay at the basic

minimum hourly wage rate for every day that plaintiff worked a spread of hours that

exceeded 10 hours (or a shift in excess of 10 hours) in violation of NYLL §§ 190, *et seq*.,

and 12 NYCRR § 142-2.4.

126.  Defendant Quantem willfully violated the rights of plaintiff by failing to pay her the

wages due and owing for work performed in violation of New York spread of hours wage

requirement.

127.  As a result of Defendant Quantem' s violations of the New York spread of hours wage

requirement, plaintiff is entitled to recover from defendants her unpaid spread of hours

pay, liquidated damages, pre-judgment and post-judgment interest, costs, and reasonable

attorneys' fees.

## XI.  SEVENTH CAUSE OF ACTION
### VIOLATIONS OF NEW YORK HUMAN RIGHTS LAW

128. Under the New York Human Rights Law it is an unlawful discriminatory employment practice for an employer to discriminate against an individual because of sex "in compensation or in terms, conditions, or privileges of employment".  Executive Law §296(1).

129. During her employment with Defendant Quantem, Plaintiff Jackson was not consistently paid at the same wage rate as other lead material handlers, all of whom were men.

130. Plaintiff was discriminatorily treated because of her sex by Defendant Quantem in her many efforts to obtain pay equity with the other lead handlers.

131. By the actions described above, among others, Defendant Quantem and Defendant Shufelt violated the anti-discrimination provisions of Executive Law §296 et seq.

132. The above treatment caused plaintiff to suffer embarrassment, humiliation, and economic damages.

## XII.  EIGHTH CAUSE OF ACTION
### VIOLATION OF NEW YORK COMMON LAW

133. In an effort to sabotage plaintiff's prospective employment, around June 20, 2017 Defendant Shufelt informed plaintiff's prospective employer, Defendant Matheson, that he was plaintiff's supervisor and that Plaintiff Jackson had committed several "terminable offenses",  including timeclock theft" and "insubordination"

134. Defendant Shufelt's allegations concerning Plaintiff Jackson were false.

135. Defendant Shufelt' defamatory statements of fact were made to Defendant Matheson with the intention of harming Plaintiff Jackson and her employment prospects with Defendant Matheson.

136. Defendant Shufelt's false allegations were malicious and motivated by spite or ill will and are not protected by privilege.

137. Defendant Shufelt's defamatory and tortious actions caused and continue to cause Plaintiff Jackson to suffer substantial losses, including the loss of past and future earnings, compensation, and other employment benefits; impairment and damage to plaintiff's good name and reputation; and severe embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

138. The conduct of Defendant Shufelt was done in a deliberate, callous, malicious, and fraudulent manner and intended to injure plaintiff. Plaintiff is therefore also entitled to an award of punitive damages.

**WHEREFORE,** Plaintiff Jackson respectfully requests this honorable court grant her the following relief:

    A. Declare that Defendant Quantem violated the Equal Pay Act, the FLSA provisions for prompt payment of wages, and the provisions of New York Labor Law §§190 et. seq.,

    B. Declare that Defendant Quantem's violations of the Equal Pay Act, FLSA, and New York Labor Law were willful;

    C. Enjoin Defendant Quantem from committing future violations of the New York Labor Law;

    D. Grant judgment to plaintiff against Defendant Quantem for plaintiff's claims of any

unpaid wages, untimely paid wages, and liquidated damages brought pursuant to the

Equal Pay Act and FLSA pursuant to 29 U.S.C. §216(b);

E. Grant judgment to plaintiff against Defendant Quantem for plaintiff's claims of any

unpaid wages, untimely paid wages, spread of hours pay, and liquidated damages

brought pursuant to New York Labor Law §§190 et. seq.

F. Declare that Defendant Quantem violated the provisions of Title VII by unlawfully

discriminating against the plaintiff on the basis of sex, and is vicariously liable for

the unlawful discrimination and retaliation committed by Defendant Shufelt;

G. Declare that Defendant Matheson was negligent in refusing to hire plaintiff and

violated the provisions of Title VII by unlawfully discriminating against the plaintiff

on the basis of sex;

H. Declare that Defendant Shufelt unlawfully retaliated against Plaintiff Jackson when

she sought equal treatment in being fairly paid in violation of Title VII and the New

York State Human Rights Law;

I. Declare that Defendant Quantem violated the New York Human Rights law and

enjoin Defendants Quantem and Shufelt from committing future violations of the

New York Human Rights Law;

J. Grant judgment to plaintiff against Defendant Quantem for damages arising from

defendant's violation of Title VII and the New York Human Rights Law including

the loss of past and future earnings, other employment benefits; and for the unlawful

retaliatory conduct of plaintiff's supervisor;

K. Grant judgment to plaintiff against Defendant Matheson for damages arising from

defendant's violations of Title VII including the loss of past and future earnings, and other employment benefits;

L.  Grant judgment to plaintiff against Defendant Shufelt for damages arising from defendant's violations of Title VII and the New York Human Rights Law including the loss of past and future earnings, other employment benefits;

M. Declare that Defendant Shufelt defamed plaintiff by falsely accusing her of misconduct causing Defendant Matheson not to hire her, and award plaintiff damages and punitive damages arising from Defendant Shufelt's defamatory and tortious conduct;

N.  Award plaintiff prejudgment interest, costs, and reasonable attorneys' fees; and

O.  Grant such further relief as the court finds just and equitable.

Respectfully Submitted,

/s/
Peter O'Brian Dellinger, Esq.
Empire Justice Center
1 West Main Street, Suite 200
Rochester, NY 14614
(585) 454-4060

pdellinger@empirejustice.org

Attorneys for Plaintiff

Dated:  Rochester, N.Y.
April 13, 2017

# Exhibit A

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jeanine Jackson<br>65 Baxter Drive<br>Rochester, NY 14626 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Holly M. Shabazz,** | |
| 16G-2017-03351 | **State & Local Program Manager** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)       Charging Party wishes to pursue matter in Federal District Court.

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u>** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_Kevin J. Berry,_
**Kevin J. Berry,**
**District Director**

January 17, 2018

(Date Mailed)

Enclosures(s)

cc:
**MATHESON FLIGHT EXTENDERS, INC.**
**DBA MATHESON TRUCKING, INC**
**Attn: Shirley Curran, CHRO**
**9785 Goethe Road**
**Sacramento, CA 95827**

Carey Ann Denefrio, Esq.

**Elizabeth Koo, Esq.**
**Empire Justice Center**
**One West Main Street, Suite 200**
**Rochester, NY 14614**

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Jeanine Jackson<br>65 Baxter Drive<br>Rochester, NY 14626 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative<br>Holly M. Shabazz,<br>State & Local Program Manager | Telephone No.<br>(212) 336-3643 |
|---|---|---|
| 16G-2017-03251 | | |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X]  Other (briefly state)      **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_(signature)_                                                    January 17, 2018

Enclosures(s)

Kevin J. Berry,
**District Director**                                        (Date Mailed)

cc:

QUANTEM AVIATION SERVICES, LLC
Attn: Jennifer Combs, Human Resources Manager
175 Ammon Drive, Suite 106
Manchester, NH 03103

Margaret Coughlin LePage, Esq.

Elizabeth Koo, Esq.
Empire Justice Center
One West Min Street, Suite 200
Rochester, NY 14614

# Exhibit B

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISCTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JEANINE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| QUANTEM AVIATION SERVICES, LLC | ) | |
| MATHESON TRUCKING, INC., | ) | |
| MATHESON FLIGHT EXTENDERS, INC., | ) | |
| and RONALD SHUFELT, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF CONSENT – FAIR LABOR STANDARDS ACT

I authorized Empire Justice Center, and any associated attorneys as well as any

successors or assigns, to represent me in this action.

I agree and consent to be a party plaintiff in a law suit brought under the Fair Labor

Standards Act, 29 U.S.C. § 201 et seq. to secure unpaid wages, liquidated damages, attorney's

fees, costs and/or other relief arising out of my employment with Quantem Aviation Services,

LLC.

Dated: Rochester , New York
      April 9, 2018

Jeanine Jackson

1