```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

JEANINE JACKSON,

        Plaintiff,

  -vs-

QUANTEM AVIATION SERVICES, LLC,
MATHESON TRUCKING, INC., and
MATHESON FLIGHT EXTENDERS, INC.,

        Defendant.

**DECISION AND ORDER**
**No. 6:18-cv-06297(MAT)**

## I. Introduction

Represented by counsel, plaintiff Jeanine Jackson ("Jackson") instituted this action pursuant to the Equal Pay Act and related provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e, et seq., (Title VII); New York Labor Law, § 190, et seq.; and the New York State Human Rights Law, Executive Law § 296, et seq. against defendant Quantem Aviation Services, LLC ("Quantem") and defendants Matheson Trucking Inc. and Matheson Flight Extenders, Inc. (collectively, "Matheson"). For the reasons discussed below, Matheson's Motion to Dismiss the Amended Complaint is granted, and Jackson and Quantem's Joint Motion for Approval of the Proposed Settlement is granted.

## II. Factual Background and Procedural History

On April 13, 2018, Jackson filed a Complaint (Docket No. 1), and on May 18, 2018, she filed an Amended Complaint("Am. Compl.")

(Docket No. 4). The following factual summary is based on the Amended Complaint's allegations, which are taken as true for purposes of the pending Motion to Dismiss.

Jackson, a 32 year-old African-American woman, was employed by Quantem from April 2016, until June 25, 2017. She began as a material handler and was promoted in June 2016, to lead handler by her supervisor Ronald Shufelt ("Shufelt") and Quantem's general manager, Todd Pennington ("Pennington"). Jackson was the only female lead handler employed by Quantum. In August of 2016, Jackson noticed that she was being paid at the lead handler rate of $16.58 per hour for only some hours of her work; she was paid at the rate of $15.58 for the remainder of the hours she worked.

Jackson complained to Shufelt who said he would take care of it but never did. Jackson continued to complain about being underpaid approximately once per month to Shufelt and to Pennington. On June 9, 2017, Jackson complained directly to Jennifer Coombs ("Coombs"), the Quantum Aviation Services Human Resource Manager, about not being properly compensated for her work. In response, on June 9, 2017, Quantem made Jackson "the LEAD in charge of pay issues" at a pay rate of $16.58 per hour. In this position, Jackson's duties included reviewing, scanning and emailing the sign in/out sheet to Shaun Kane, Quantem's Business Area Manager, for both shifts before leaving in the morning.

As part of her new timekeeping responsibilities, Jackson discovered that despite her own complaints about being underpaid, another lead handler, Cordell James ("James"), had been consistently paid at the lead handler rate of $16.58 per hour for all his hours of work. James and Shufelt were responsible for developing the weekly work schedule for Quantem employees. Jackson discovered that both James and Shufelt were committing time-clock theft by over-reporting their time on the sign in/out sheets by coming in early or leaving early. When Jackson brought her concerns to Shufelt, he became upset and told her "not to do anything stupid[.]" Am. Compl. ¶ 73.

Matheson Flight Extenders, Inc., was selected by the U.S. Postal Service to take over the work performed by Quantem in Rochester on June 26, 2017. On June 12, 2017, Jackson applied for a position as a material handler or lead handler with Matheson and passed the required drug test. Around the same time, other Quantem employees, including Shufelt, also applied for positions with Matheson.

On June 16, 2017, Jackson reported her discoveries about Shufelt and James' incorrect time records to Kane. Also around that time, Jackson spoke with Twala King ("King"), a Matheson human resources ("HR") employee, about her job application. In that conversation, Jackson informed King about Shufelt and James' submission of false time records and expressed fear that Shufelt

would retaliate against her. On June 16, 2017, King responded by email stating that "everything is going to be fine" and that John Miller ("Miller"), Mathesons's Safety Manger, "spoke highly of you" and that "the people that count in the process knows [sic] your worth." Am. Compl. ¶ 78.

On June 18, 2018, Shufelt threatened Jackson, stating "I know what you're trying to do. You're not going to get away with it." Id. ¶ 79. On June 20, 2017, Shufelt contacted Miller and claimed that Jackson had recently committed timeclock theft and insubordination. Id. ¶ 80.

Around that time, Jackson also spoke directly with Miller and discussed Shufelt's submission of fraudulent time records and expressed concerns that her current job and future job prospects were in jeopardy. Miller proposed mediation and communication between the Quantem and Matheson HR departments to resolve the conflict.

On June 21, 2017, frustrated by the lack of progress on receiving the back pay she believed she was owed, Jackson filed a discrimination complaint against Quantem with the New York State Division of Human Rights ("NYSDHR") alleging sexual harassment, sexual discrimination, and racial discrimination. However, she withdrew her complaint after Kane agreed to resolve her pay issues and assured her she would not be fired by Quantem because there were no grounds for her termination.

On June 26, 2017, Matheson took over operating the facility at the Airport. Plaintiff reported for work on June 26, 2017, but was informed by Matheson that she "wasn't cleared to work." Am. Compl. ¶ 89. On June 26, 2017, Shufelt began working as a supervisor for Matheson and James began working as a lead handler.

On June 28, 2017, as part of her paycheck from Quantem, Jackson received $1,430.03 in back pay to January 2017 for her hours worked as a lead handler.

On June 29, 2017, Jackson learned that she had not been hired by Matheson. Matheson had originally intended to include her in the transfer of Quantem employees on June 26, 2017, but "chose not to continue with the transfer" based on Shufelt's reported claims of insubordination and timeclock theft. Am. Compl. ¶ 94. According to Quantem, "no Quantem manager was authorized to provide any information about employees to Matheson," Matheson did not request or receive any HR files from Quantem regarding its employees, and never contacted Quantem regarding Jackson or her work record.

Quantem is a defendant in all seven causes of action; the only claim against Matheson is for alleged gender discrimination in violation of Title VII of the Civil Rights Act of 1968, on the basis that they were negligent "in accepting as true the false and retaliatory allegations made by [Quantem supervisor] Ronald Shufelt" on June 20, 2017. As to Quantem, Jackson alleges that she was paid less than her male counterparts for performing the same

work as a "lead handler" at Quantem. Jackson also alleges that Quantem paid certain wages late in violation of the FLSA as well as committed several violations of State law (N.Y. Labor Law §§ 198(1-a) (failure to pay wages when due); N.Y. Labor Law § 195(3) (failure to issue accurate wage statements); N.Y. Labor Law § 190, et seq.; N.Y. Comp. Code. R. & Regs., tit. 12, § 142-2-4 (unpaid spread of hours pay).

On August 30, 2018, Matheson filed a Motion to Dismiss (Docket No. 9) in lieu of answering the Amended Complaint. Jackson filed a Memorandum of Law in Opposition, and Matheson filed a Reply.

Beginning in September of 2018, Quantem and Jackson engaged in settlement negotiations. Based on the records available, Jackson's counsel, Peter Dellinger, Esq. ("Attorney Dellinger"), estimates that she is owed approximately $3,000 in unpaid wages and overtime wages under the FLSA. Quantem disputes the date on which Jackson completed her lead handler training and maintains she was eligible for lead handler pay for only six months. Jackson in turn acknowledges in her Amended Complaint that, in response to her grievances about being unfairly paid, Quantem paid her $1,430.00 in retroactive pay on June 28, 2017.

In November of 2018, Quantem and Jackson reached agreement on the terms of a proposed settlement. Principally, Jackson will receive a total of $3,125.00 in unpaid wages and overtime wages and a separate check for $3,125.00 which represents damages for her

remaining claims. The proposed settlement permits Jackson to receive the total amount of unpaid and overtime wages owed to her, as originally calculated by her attorney, and an equal amount in damages for her other claims against Quantem. The agreement contains mutual release provisions, does not contain any confidentiality or waiver provisions or restrictions on employment, and permits Jackson to make any truthful statement related to or concerning this lawsuit Action.

As far as attorney's fees, the proposed settlement provides that The Empire Justice Center will receive $2,000.00. Attorney Dellinger indicates that $2,000.00 constitutes reimbursement for approximately 6.60 hours of his time; however, from September 2018 until the present, he has expended more than twice that amount of time reaching a settlement with Quantem.

On February 13, 2019, Jackson and Quantem submitted a joint letter-motion (Docket No. 21) for approval of the settlement agreement ("Motion for Approval of Proposed Settlement") reached between these two parties, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015) ("Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."), cert. denied, 136 S. Ct. 824 (2016). On February 27, 2019, Matheson filed a Response (Docket

No. 23) objecting to the Proposed Settlement[1] and asking that the Court delay approval of the Proposed Settlement pending the Court's issuance of a decision on Matheson's Motion to Dismiss. Jackson filed a Reply on February 28, 2019 (Docket No. 24). On March 8, 2019, the Court issued an order granting Matheson's request for an extension of time to respond to the Amended Complaint until 60 day days after the Court's rules on the Motion for Approval of the Proposed Settlement.

**III. Matheson's Motion to Dismiss**

    **A.   Rule 12(b)(6) Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint pleads a claim with facial plausibility when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint that consists merely of "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or "'naked assertion[s]' devoid of 'further factual enhancement'" does not meet the plausibility standard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557). In deciding a

---

[1] The Proposed Settlement was submitted as Exhibit A to the letter-motion filed by Attorney Dellinger (Docket No. 21).

motion to dismiss under Rule 12(b)(6), a court must accept the complaint's well pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. J.P. Morgan Chase Co., 533 F.3d 187, 196 (2d Cir. 2009).

**B.   Title VII**

**1.   Elements of a Prima Facie Claim**

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A claim alleging discriminatory denial of employment is analyzed under the three-step burden shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The Second Circuit has explained that "while the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent. If she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse

employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the prima facie requirements and a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (citation omitted). Thus, at the pleading stage, a litigant asserting a claim subject to the McDonnell Douglas burden-shifting standard is not required to plead facts sufficient to establish a prima facie case, and need only allege sufficient facts to give the defendant "fair notice of the basis for [her] claims." Boykin v. KeyCorp., 521 F.3d 202, 212 (2d Cir. 2008) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 514 (2002) (holding that a plaintiff asserting disparate treatment claims under Title VII and the ADEA need not allege "specific facts establishing a prima facie case of discrimination" to survive a motion to dismiss; the McDonnell Douglas burden-shifting framework "is an evidentiary standard, not a pleading requirement," and to require more than Fed. R. Civ. P. 8(a)'s "simplified notice pleading standard" would unjustifiedly impose a heightened pleading requirement on the plaintiff)). Nonetheless, courts in this Circuit have noted that in evaluating a Rule 12(b)(6) motion to dismiss a cause of action subject to the McDonnell Douglas framework, the elements of a prima

facie case of discrimination are relevant in determining whether the defendant has been given fair notice of the plaintiff's claims. Corbett v. Napolitano, 897 F. Supp.2d 96, 111 (E.D.N.Y. 2012) (collecting cases).

### 2. The "Cat's Paw" Theory of Title VII Liability

The "cat's paw" metaphor "refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action[.]" Cook v. IPC Intern. Corp., 673 F.3d 625, 628 (7th Cir. 2012). "Because the supervisor, acting as agent of the employer, has permitted himself to be used 'as the conduit of [the subordinate's] prejudice,' Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990)," Vasquez v. Empress Ambulance Serv., Inc., 835 F.3d 267, 272 (2d Cir. 2016), "that prejudice may then be imputed to the employer and used to hold the employer liable for employment discrimination." Id. The Second Circuit in Vasquez joined its sister circuits in holding that the "cat's paw" theory "may be used to support recovery for claims of retaliation in violation of Title VII." Id. at 272-73. The Vasquez panel noted that the theory "accords with [its] longstanding precedent . . . in the employment-discrimination context, that 'a Title VII plaintiff is entitled to succeed, "even absent evidence of illegitimate bias on

-11-

the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the [decisionmaking] process."'" Id. (quoting Holcomb v. Iona Coll., 521 F.3d 130, 143 (2d Cir. 2008) (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999)).

**C. Analysis of the Parties' Arguments**

In the Motion to Dismiss, Matheson argued that there is no basis for imputing Title VII liability to a prospective employer for its alleged negligence in conducting a due-diligence investigation into a prospective employee. See Matheson Mem. (Docket No. 9-1) at 5. In opposition, Jackson asserts that the "cat's paw" theory of Title VII employer liability applies and argues that Matheson's alleged negligence in relying on Shufelt's "untrue misconduct allegations" against Jackson in declining to hire her "are sufficient to plausibly demonstrate employer negligence upon which Title VII relief may be granted." Pl.'s Opp. Mem. (Docket No. ) at 6-7. Matheson replies that cat's paw liability does not exist because, on the date Shufelt made his false statements about Jackson to Matheson, i.e., June 20, 2017, Shufelt still worked for Quantem Aviation. In other words, Matheson asserts, it was not Shufelt's employer on that date; it was his prospective employer. See Matheson Reply at 2.

The Court agrees that based on Vasquez there must be an employer-employee relationship in order to rely on the cat's paw

-12-

theory of liability, for it was derived from agency principles. See Vasquez, 835 F.3d at 273 (noting that the term "employer" is defined under Title VII to include "agents," and "Congress has directed federal courts to interpret Title VII based on agency principles") (quotation omitted; citing Staub v. Proctor Hosp., 562 U.S. 411, 418 (2011) (employment discrimination case brought under Uniformed Services Employment and Reemployment Rights Act; deriving cat's paw liability from "general principles of . . . agency law")).

Jackson argues that "[a]t this early stage of the litigation, it is highly plausible" that Shufelt was an employee of Matheson "at the time when [Matheson] chose not to continue the transfer of Jackson to Matheson's employ." Pl.'s Opp. Mem. at 8 (internal quotation marks omitted). Jackson alleges that she "reported for work on June 26, 2017, but was informed by Matheson that she 'wasn't cleared to work[.]'" Am. Compl. ¶ 89. She further alleges that Shufelt began working as a supervisor for Matheson on that same date. Id. ¶ 90. Jackson goes on to assert that "[i]n making the decision not to hire [her], Defendant Matheson relied on Ronald Shufelt's June 20, 2017 allegations of misconduct." Id. ¶ 95.

Matheson argues that based on Jackson's own allegations, Shufelt was not an employee of Matheson at the time that he "committed [the] discriminatory act that influenced the ultimate employment decision." Staub, 562 U.S. at 422 n. 4. Jackson contends

-13-

that the relevant act is Matheson's decision not to continue with her employment transfer on June 29, 2017, at which point in time it was "highly plausible" that Shufelt was an employee of Matheson. The Court agrees with Matheson that there must have existed an employee-employer relationship between Shufelt and Matheson at the time Shufelt committed the discriminatory act that influenced Matheson's ultimate employment decision. See, e.g., Matthews v. Waukesha Cty., 759 F.3d 821, 829 (7th Cir. 2014) ("Liability under [the cat's paw] theory can be imposed where a non-decision-making *employee* with discriminatory animus provided factual information or input that may have affected the adverse employment action.") (emphasis supplied). Indeed, if there is no agency relationship between the subordinate and the decisionmaker, then there is no basis for imputing the subordinate's discriminatory motivation to the employer. See Vasquez, 835 F.3d at 275-76 ("Only when an employer in effect adopts an employee's unlawful animus by acting negligently with respect to the information provided by the employee, and thereby affords that biased employee an outsize role in its own employment decision, can the employee's motivation be imputed to the employer and used to support a claim under Title VII.").

The Amended Complaint does not plausibly allege that Shufelt was an employee of Matheson at the time he allegedly provided the false information about Jackson to Matheson. Rather, the Amended

-14-

Complaint definitively alleges that Shufelt made his discriminatory statements on June 20, 2017, and thaat he was not hired by Matheson until June 26, 2017. Jackson does not allege, for example, that Shufelt made other statements after his hiring to Matheson. Nor has Jackson requested permission to further amend the Amended Complaint. Accordingly, the Court finds that Jackson has not alleged a plausible Title VII discrimination claim against Matheson under a cat's paw theory of liability. The Motion to Dismiss the Amended Complaint as to Matheson is granted.

**IV. The Joint Motion for Approval of the Proposed Settlement**

In most circumstances, under Rule 41(a)(1)(A)(ii), litigants do not need a court order to dismiss, with the consent of all parties, a plaintiff's claims against all or some defendants. See FED. R. CIV. P. 41(a)(1)(A)(ii). The Second Circuit has held, however, that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." Cheeks, 796 F.3d at 206. Although Cheeks clearly announced the requirement of prior court approval of an FLSA settlement, it did not enunciate the factors to be considered by the court. See id. at 206–07. In attempting to fill in the blanks left by the Second Circuit in Cheeks, district courts have imported the multi-factor standard from Wolinsky v. Scholastic Inc., 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012), to evaluate whether an FLSA wage and hour settlement is

"fair and reasonable." Li Rong Gao v. Perfect Team Corp., 249 F. Supp.3d 636, 638 (E.D.N.Y. 2017) (citing Cortes v. New Creators, Inc., No. 15 Civ. 5680(PAE), 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016); Beckert v. Rubinov, No. 15 Civ. 1951(PAE), 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015); Velasquez v. SAFI-G, Inc., 137 F. Supp.3d 582, 583 (S.D.N.Y. 2015)).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky, 900 F. Supp.2d at 335 (quoting Medley v. Am. Cancer Soc., No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

Taking the fourth factor first, Attorney Dellinger represents, and the Court sees no reason to believe otherwise, that the Proposed Settlement is the product of arm's-length bargaining between experienced counsel. "The settlement was reached following the exchange of paper discovery, which surely informed the parties

as to the strengths and weaknesses of their positions." Cortes, 2016 WL 3455383, at *4 (citation omitted).

As to the fifth factor, the Court finds no suggestion of fraud or collusion between Jackson and Quantem. In particular, because Jackson no longer works for Quantem, "there is little cause for concern that [Quantem] used improper leverage to secure settlement." Id. (citing Cisneros v. Schnipper Rest. LLC, No. 13 Civ. 6266(JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion "not as relevant when the plaintiffs no longer work for the defendant")).

Turning to the second factor, the settlement allows the parties to avoid additional litigation expense and to circumvent the costs of discovery, further motion practice, and potentially trial. Cortes, Inc., 2016 WL 3455383, at *3. Attorney Dellinger represents that Jackson is primarily interested in a monetary settlement that will allow her to quickly receive the amount of past wages she believes is owed to her; she also wants to avoid the risks and delays associated with a potential trial. The substance and structure of the Proposed Settlement accomplish these goals.

With regard to the first factor, the Proposed Settlement provides that Jackson will receive a total of $3,125.00 in unpaid wages and overtime wages and a separate check for $3,125.00 which represents damages for her remaining claims. Thus, the Proposed Settlement permits Jackson to receive the total amount of unpaid

and overtime wages owed to her, as originally calculated by her attorney, and an equal amount in damages for her other claims against Quantem. Moreover, the Proposed Settlement contains mutual releases, does not contain any confidentiality or waiver provisions or restrictions on employment, and permits Jackson to make any truthful statement related to or concerning this lawsuit Action.

With regard to the third factor, Attorney Dellinger indicates that Quantem disputes the amount of hours for which Jackson is entitled to the lead handler pay rate. During negotiations, Quantem contested the date on which Jackson completed her lead handler training and asserted that she is only entitled to six months of payment at the lead handler rate. Jackson acknowledges that if Quantem is correct about the extended training period and the calculation of her eligible hours at the lead handler rate, the damages for her wage-related claims could be significantly reduced. In addition, Jackson concedes that Quantem already paid her $1,430.00 in back wages she claimed to have been owed. The Proposed Settlement obviates the substantial risk facing Jackson as to the amount of damages she can recover. Net of attorney's fees, she will recover 68 percent of what she believes her total unpaid damages are. In other words, Attorney Dellinger's requested fee represents 32 percent of the total amount of damages ($6,250.00) provided for by the Proposed Settlement. The Court accordingly does not find that the Proposed Settlement favors Attorney Dellinger's interests

over those of his client. See, e.g., Lliquichuzhca v. Cinema 60, LLC, 948 F. Supp.2d 362, 366 (S.D.N.Y. 2013) (finding that "the settlement does not favor plaintiffs' counsel over plaintiffs' themselves" where "plaintiffs are receiving approximately 50% of what they would have been entitled to with a judgment while plaintiff's counsel is receiving only 32% of the share of attorney's fees that the Court would have awarded").

Finally, the Court notes that Wolinsky also identified several factors which weigh against settlement approval, "includ[ing] the following: (1) 'the presence of other employees situated similarly to the claimant'; (2) 'a likelihood that the claimant's circumstance will recur'; (3) 'a history of FLSA non-compliance by the same employer or others in the same industry or geographic region'; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'" 900 F. Supp.2d at 336 (quoting Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1244 (M.D. Fla. 2010)). None of the foregoing factors are present in this case.

Having found that all of the relevant Wolinsky factors favor approval of the Proposed Settlement and none of the factors counsel against approval, the Court will grant the Joint Motion to Approve the Proposed Settlement.

**V. Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that the Motion to Dismiss the Amended Complaint filed by Matheson Trucking Inc. and Matheson Flight Extenders, Inc. is **granted**; Matheson Trucking Inc. and Matheson Flight Extenders, Inc. are terminated as defendants; and judgment is entered in their favor. It is further

**ORDERED** that the Joint Motion for Approval of the Proposed Settlement filed by Jeanine Jackson and Quantem Aviation LLC is **granted**.

The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   June 25, 2019
         Rochester, New York